UNITED STATES *v.* F. W. WOOLWORTH Co. (No. 3615)[1]

United States Court of Customs and Patent Appeals, December 30,. 1933

*Charles D. Lawrence,* Assistant Attorney General (*Marcus Higginbotham, Jr.,.* special attorney, of counsel), for the United States.
*Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for appellee.

[Oral argument December 14, 1933, by Mr. Lawrence and Mr. Sharretts]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT,. Associate Judges

BLAND, Judge, delivered the opinion of the court:

The collector at the port of New York classified certain celluloid toys under paragraph 1513, Tariff Act of 1930, and assessed the same. with duty at 1 cent each and 60 per centum ad valorem. Each of the toys was regarded as having a movable member or part. Protest by the importer was duly filed against said classification and assessment. by the collector. One of the claims in the protest was that the merchandise was dutiable under said paragraph 1513 at only 50 per centum ad valorem plus 1 cent each. The other claims in the protest were not pressed below or here, and will not be considered by us.

The United States Customs Court sustained the protest, and the Government has appealed from its judgment.

The pertinent part of said paragraph 1513 reads as follows:

Par. 1513. * * * dolls and toys, composed wholly or in chief value of any product provided for in paragraph 31, having any movable member or part, 1 cent each and 60 per centum ad valorem; not having any movable member or part,. 1 cent each and 50 per centum ad valorem * * *.

[1] T. D. 46834.

The merchandise is represented by three exhibits. Exhibit 1 is a baby's celluloid rattle being a highly colored celluloid cylinder 1½ inches in diameter by about 4 inches in length, into one end of which is inserted a celluloid handle. When the toy is shaken, certain sounds emanate from the interior of the cylinder, which somewhat resemble musical notes, and are produced by metal striking against pieces of metal of different sizes. The ends of the cylinder are closed. From the record it is apparent that the particular construction of this toy was not definitely ascertained by the Customs Court, and that the court relied upon the record showing that the rattling sound was made by a "little stone or pebble or something inside of it" rattling when shaken, similar in character to Exhibit 3. In view of our conclusion as to Exhibit 3, we think this fact is immaterial.

Exhibit 2 is a celluloid toy bullfrog, about 4 inches long by 2½ inches wide, the upper side of which is green and the lower side of which is white. Upon pressure on the rounded lower side of said toy, a cracking noise is made, due to the flexing of the stiff celluloid, and its springing back into shape.

Exhibit 3 is a celluloid toy fish about 5 inches long and 1½ inches wide at the broadest portion, red in color, and containing in the hollow thereof a number of small lead shot. When the fish is shaken, the shot roll from one end to the other and from one side to the other in the hollow cavity in the fish, and a rattling noise is made by the shot coming in contact with the thin celluloid sides of the toy.

It will be noticed that the provision under consideration relates to toys and dolls composed wholly or in chief value of any product provided for in paragraph 31 (cellulose, etc.), and that the 60 per centum duty applies, instead of the 50 per centum duty provided for therein, if the article has any movable member or part. The sole question here is, do these noisemaking toys respond to the term "having any movable member or part".

It is the contention of the Government that the shot in the fish and the contents of the interior of the baby's rattle are parts of the toys and that the parts move; that they, therefore, fall squarely within the provision of the paragraph.

It is the contention of the importer that the phrase "having any movable member or part" is intended to apply only to a jointed article such as a doll having arms and legs attached in such a way as to permit their being moved in different positions. Particularly as to the celluloid frog, the importer argues that all celluloid articles would be movable if a tendency to be easily bent or flexed should be regarded as "movable." The importer points out that when the paragraph was prepared, the committees of Congress had before them the Sum-

mary of Tariff Information, 1929, Volume 2, in which the following appeared at page 1953 with reference to schedule 14:

A large proportion of the "celluloid" dolls coming from Japan are fully jointed, in the production of which the foreign manufacturer has an advantage in labor cost by reason of the amount of handwork involved in attaching the movable parts. Dolls having movable arms and legs are preferred to the machine-made one-piece molded dolls made in the domestic industry, or to those having movable arms only.

Appellee's counsel argues that it was, therefore, the intent of Congress, by the use of the language in the paragraph which is in controvery here, to take care of the conditions pointed out by the Tariff Commission and that, therefore, the term "movable member or part" should apply only to such parts as the arms, legs and head of a jointed doll or toy, and that it could not have been the intent of Congress to have the phrase under consideration apply to one-piece molded articles.

We agree with the contention of the importer and with the decision of the court below in respect to Exhibit 2. In our judgment, there is no warrant for holding that a molded, hollow celluloid toy has movable parts merely because upon bending it or a part of it, a noise will be produced. As has been suggested by the importer, if this feature of the toy should be regarded as giving to it the character of having a movable part, practically all celluloid toys and dolls would have such parts, and it is clear that Congress had also in mind celluloid toys which had no movable parts.

As to the other two exhibits, we find ourselves in disagreement with the court below and with the appellee. The Summary of Tariff Information referred to speaks only of dolls. The word "member", of course, includes arms, legs and heads which, if movable, require additional work in attaching such members. Of course, the word "member" would apply in case of a toy dog, horse or bird. Congress was not content to use the word "member" but also used the word "part." Having used both terms "dolls" and "toys", and also the terms "member" and "part", it seems clear that the legislative intent was to reach further than dolls, which comprised the only subject matter covered by the quoted language used by the Tariff Commission. Clearly, the contents of the baby's rattle and the contents of the fish are parts of the toys. They move and the movement makes a noise which seems to be the chief characteristic of the toy, especially in the case of the baby's rattle. Outside of the rattling or noise-making qualities of Exhibit 1, we can see little, if any, other quality that would afford amusement for a child.

If the contention of the importer, to the effect that Congress sought to levy a higher duty on movable parts in view of the cheap foreign labor cost in putting the parts together, be conceded, it seems that

our holding herein is in entire accord with this view. Additional labor and additional material were required to create the movable parts of Exhibits 1 and 3 than would have been required in a plain, molded celluloid toy having no movable parts.

Appellee argues further that the principle *de minimis non curat lex* applies, and that there is no substantial portion of the imported toys which could possibly be regarded as movable. Appellee relies upon *Seeberger* v. *Schlesinger*, 152 U.S. 581; *United States* v. *McLaughlin & Freeman*, 13 Ct. Cust. Appls. 404, T.D. 41324; and *Schenkers* v. *United States*, T.D. 45916, 59 Treas. Dec. 1257.

We are not impressed with this contention in respect to Exhibits 1 and 3. The thing that gives the toy its most marked characteristic and which, possibly, is its greatest selling feature would be ignored under the rule invoked by the appellee.

The judgment of the United States Customs Court is *modified; affirmed* as to Exhibit 2 and *reversed* as to Exhibits 1 and 3.

GARRETT, Judge, dissents as to Exhibit 3.